#24948-a-JKM

**2009 SD 82**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LAURA PETERS,                                    Plaintiff and Appellee,

   v.

BARKER & LITTLE, INC.,                           Defendant and Appellant,

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEFF W. DAVIS
Judge

* * * *

TODD A. SCHWEIGER                    Attorney for plaintiff
Rapid City, South Dakota             and appellee.

SCOTT SUMNER                         Attorney for defendant
Rapid City, South Dakota             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 24, 2009
REASSIGNED JULY 6, 2009

OPINION FILED **09/02/09**

MEIERHENRY, Justice (on reassignment).

[¶1.]    This is an appeal from the circuit court's decision not to set aside a default judgment under SDCL 15-6-55(c) and 15-6-60(b).  We affirm.

## BACKGROUND

[¶2.]    Barker & Little, Inc. originally moved to set aside a 2003 default judgment that had been entered for the plaintiff, Laura Peters, in the amount of $24,231.  Peters had been a tenant in a rental unit owned by Barker & Little.  The allegations in her complaint were that Barker & Little:  willfully locked her out of her rental unit on September 13, 2002; constructively locked her out on September 18, 2002; willfully removed and destroyed her personal property; appropriated her personal property; demeaned her and her loss; invaded her privacy; caused her to lose her job and her subsidized housing; and caused her humiliation and emotional distress.  When Barker & Little did not answer, Peters moved for a default judgment for damages in the amount detailed in her accompanying affidavit.  Barker & Little was served with the default judgment on March 19, 2003.  Shortly thereafter, on March 25, 2003, Barker & Little moved to set aside the judgment under SDCL 15-6-55(c) and 15-6-60(b)(1) based on "excusable neglect."  The company claimed that the paperwork was possibly misplaced when it moved its office.

[¶3.]    At the motion hearing to set aside the judgment, the circuit court judge orally granted the motion to set aside the default judgment because of excusable neglect and indicated that he would award terms to Peters.  Although the record indicates that the judge told the attorney for Barker & Little to "draw your order

setting [the default judgment] aside," the order was never drawn or submitted for the court's signature. Even so, Barker & Little filed an answer to Peters' complaint on May 16, 2003. During the following year, the parties exchanged settlement offers and conducted some discovery, but the case went dormant around August 3, 2004.

[¶4.] In 2007, Barker & Little learned, through an unrelated title search, that Peters' default judgment still existed. The parties again attempted to reach a settlement without success. Ultimately, Peters obtained an execution of the default judgment. On March 17, 2008, Barker & Little renewed its motion to set aside the default judgment on the same basis of excusable neglect cited in its 2003 motion. The motion also alleged that the judgment, on its face, included an improper award of punitive damages in that both double and treble damages were awarded. The circuit court judge denied Barker & Little's motion and entered an order affirming the March 11, 2003, default judgment in the amount of $24,231 plus attorney's fees of $851.

## STANDARD OF REVIEW

[¶5.] We review a court's denial of a request to set aside a default judgment under the abuse of discretion standard. Estes v. Ashley Hospitality, Inc., 2004 SD 49, ¶4, 679 NW2d 469, 472 (citing Upper Plains Contracting Inc. v. Pepsi Ams., 2003 SD 3, ¶11, 656 NW2d 323, 327).

## ANALYSIS

[¶6.] Barker & Little claims on appeal that the circuit court erred by denying its renewed motion to set aside the default judgment. Barker & Little also

challenges the damages awarded in the judgment. It claims that the damages were not warranted by the evidence, that no findings supported the award, and that no evidentiary hearing was held to establish the punitive damages award.

[¶7.]        A default judgment may be set aside for good cause in accordance with SDCL 15-6-55(c) and SDCL 15-6-60(b). "The purpose of Rule 60(b) is 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'" Peterson v. La Croix, 420 NW2d 18, 19 (SD 1988) (quoting Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F2d 509, 515 (8thCir 1984). To set aside a judgment, the moving party must first establish one of the grounds identified in SDCL 15-6-60(b). Barker & Little claimed good cause based on excusable neglect. We have defined excusable neglect as "neglect of a nature that would cause a reasonably prudent person under similar circumstances to act similarly." *Peterson*, 420 NW2d at 19-20 (citations omitted). In addition to establishing grounds under the statute, an applicant must also show a meritorious defense. *Id.* Thus, in order for the judgment to be set aside, entirely or in part, Barker & Little had the burden of showing (1) excusable neglect and (2) a meritorious defense.

[¶8.]        At the 2003 motion hearing, the judge indicated he would set aside the judgment on the basis of excusable neglect. However, the judge's oral pronouncement was not reduced to writing or a formal order. Barker & Little argues that the judge's oral ruling should be enforced as if it had been reduced to a formal order. Barker & Little cites no authority for this proposition. Instead, it relies on SDCL 15-6-41(b) and SDCL 15-11-11 for the proposition that the plaintiff

had the responsibility to move the case forward. Our law is well established that an order is not final until it is "reduced to writing, signed by the court or judge, attested to by the clerk and filed in the clerk's office." SDCL 15-6-58. Theoretically, the judge could have changed his mind. Until the judge's oral ruling was reduced to writing, he retained jurisdiction to reconsider. *See* Moore v. Michelin Tire Co., Inc., 1999 SD 152, ¶¶46-47, 603 NW2d 513, 525. In fact, Barker & Little acknowledges that the judge retained control of the case and purposely did not sign Peters' proposed order granting attorney's fees because the judge wanted the parties to negotiate a settlement. Although a plaintiff normally has the responsibility to move a case forward, the prevailing party to a motion has the responsibility to ensure the formal order is entered. Ultimately, Barker & Little was required to protect its right to set aside the default judgment and to ensure that the order setting aside the default judgment was signed and entered.

[¶9.] As the dissent points out, a trial court has the discretion to require a hearing to determine damages at the time a default judgment is requested. Additionally, a trial court can review the damages originally awarded in a default judgment if the judgment is set aside in whole or in part pursuant to SDCL 15-6-55(c) and SDCL 15-6-60(b). Without the formal order setting the judgment aside, the damage award in the 2003 judgment remained in effect. At the time of Barker & Little's renewed motion, five years had passed since entry of the default judgment. The main hurdle for Barker & Little in its renewed motion was the delay. Barker & Little's original motion to vacate was within the statutory one year time frame; the renewed motion came five years later. In 2003, the judge indicated

orally that he would have allowed Barker & Little to set aside the judgment and challenge the amount of damages. The same judge, however, denied the renewed motion in 2008.

[¶10.] Barker & Little's 2008 renewed motion to set aside the judgment based on excusable neglect is measured against a reasonable person standard of whether the neglect is "of a nature that would cause a reasonably prudent person under similar circumstances to act similarly." *Peterson*, 420 NW2d at 19-20 (citations omitted). The judge reviewed the entire case and concluded that Barker & Little failed to establish excusable neglect. We see no error in that conclusion. What may pass as excusable neglect within one year after entry of a judgment may not constitute excusable neglect some five years later. Furthermore, a motion to set aside a default judgment based on excusable neglect must be raised within one year after the judgment. SDCL 15-6-60(b). Barker & Little did not advocate any other subsection of SDCL 15-6-60(b) as a basis for setting aside the judgment.

[¶11.] The judge determined too much time had passed, and his original analysis of the case had changed. The judge found "that, upon a review of the entire case, . . . [Barker & Little's] defense to [Peters'] action fails to overcome the length of time [Barker & Little] has allowed to elapse during which the Default Judgment has remained in effect and [Barker & Little] has remained without formal standing before this court." Although the judge expressed at the 2003 hearing that Barker & Little may have had a meritorious defense as to some of the damages, he found the extended delay controlled the result in 2008. Barker & Little failed to show its five-year delay was reasonable under the facts of this case. Under the circumstances,

we find no abuse of discretion in denying the motion to set aside the default judgment.

[¶12.]        Affirmed.

[¶13.]        GILBERTSON, Chief Justice and SEVERSON, Circuit Judge, concur.

[¶14.]        KONENKAMP, Justice, concurs in part and dissents in part.

[¶15.]        SABERS, Retired Justice, dissents.

[¶16.]        SEVERSON, Circuit Judge, sitting for ZINTER, Justice, disqualified.


KONENKAMP, Justice (concurring in part and dissenting in part).

[¶17.]        Circuit courts have discretion to enter defaults against parties who "failed to plead or otherwise defend," but no court has discretion to award a default judgment for statutory penalties and punitive damages absent adequate evidentiary support. *See* SDCL 15-6-55(a). In upholding the denial of the motion to set aside the default, this Court never reaches the primary question: did the circuit court fail to require sufficient proof of statutory penalties and punitive damages? As the circuit judge himself said in 2003, "a $24,000 default judgment is an inappropriate windfall here given the circumstances[.]" Despite the fact that this issue was preserved and briefed on appeal, this Court simply ignores it. Therefore, as to the Court's decision finding no abuse of discretion in denying Barker & Little's motion to set aside the default, I concur, but I dissent on the award of punitive damages and statutory penalties.

[¶18.]        This Court appears to be acting on the misconception that when a default judgment is not set aside, the damage award must remain untouched,

regardless of whether any proof exists to establish the amount. On the contrary, even when a default judgment is upheld on appeal, this Court still has the obligation to either modify an unwarranted damage award or remand for further consideration when the award lacks sufficient evidence to support it. Gifford v. Bowling, 86 SD 615, 627-28, 200 NW2d 379, 385-386 (1972). There must be evidentiary support for a damage award in a default judgment. Stephenson v. El-Batrawi, 524 F3d 907, 915 (8thCir 2008). It may not be necessary for a trial court to hold a formal hearing on damages, but adequate proof must be offered in some form. *See generally* 10A Wright & Miller, *Federal Practice and Procedure* § 2688 (3ded 1998) (updated 2008). Certainly, our statute grants discretion on whether to hold a hearing. SDCL 15-6-55(b)(1) ("court *may* conduct such hearings . . . as it deems necessary and proper"); *see* Meier v. McCord, 2001 SD 103, ¶27, 632 NW2d 477, 484. A majority of courts have likewise found that the decision to conduct a hearing is generally within the sound discretion of the trial court. Action S.A. v. Marc Rich & Co., Inc., 951 F2d 504, 508 (2dCir 1991); James v. Frame, 6 F3d 307, 310 (5thCir 1993); Beck v. Atlantic Contracting Co., Inc., 157 FRD 61, 65 (DKan 1994). When there are detailed affidavits, sufficient evidentiary support, and liquidated damages, a hearing is generally unnecessary. Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc., 193 FRD 87, 89 (DCNY 2000).

[¶19.]      On the other hand, a hearing is generally advisable when the damages are unliquidated and not easily capable of mathematical computation. *See James*, 6 F3d at 310; Hunt v. Inter-Globe Energy, Inc., 770 F2d 145, 148 (10thCir 1985). Punitive damages ordinarily require an evidentiary hearing. Comdyne I, Inc. v.

Corbin, 908 F2d 1142, 1152 (3dCir 1990); Hilgeman v. American Mortg. Securities, Inc., 994 P2d 1030, 1036-37 (ArizCtApp 2000).

[¶20.]    In this case, the circuit court's 2008 order upholding the 2003 default judgment awarded plaintiff damages of $24,230.90, itemized as follows:

> 1. $990 in statutory damages under SDCL 43-32-6, for excluding plaintiff from the rental unit on September 13, 2002;
>
> 2. Plaintiff's security deposit of $495 under SDCL 43-32-6 for the September 12, 2002 lockout;
>
> 3. Plaintiff's advance rent paid as of September 13, 2002, totaling $247, under SDCL 43-32-6;
>
> 4. $990 in statutory damages under SDCL 43-32-6, for removing plaintiff's personal property from the rental unit on September 18, 2002;
>
> 5. Damages totaling $1,641 for plaintiff's and her son's personal property removed, appropriated, disposed of and/or destroyed by defendant;
>
> 6. Three times the sum of $1,641 to compensate plaintiff for the detriment caused to her by being forcibly ejected and excluded from the full possession of the rental unit through defendant's willful and wanton actions, under SDCL 21-3-6 and 43-32-6, totaling $4,842;
>
> 7. $5,000 in punitive damages for defendant's invasion of plaintiff's privacy by entering the rental unit without plaintiff's permission and removing all of her and her son's personal property and appropriating, disposing of and/or destroying this personal property;
>
> 8. $10,000 in punitive damages for defendant's intentional infliction of emotional distress by willful and malicious actions, as stated in plaintiff's pleadings; and
>
> 9. Plaintiff's costs, totaling $25.90, as evidenced by the Affidavit of Costs and Fees.

[¶21.]    On appeal, Barker & Little asserts that the court erred when it (1) awarded plaintiff punitive damages; (2) awarded both statutory and punitive damages; (3) awarded plaintiff compensatory damages based on both SDCL 43-32-6 and SDCL 21-3-6. These same arguments were made in Barker & Little's renewed

motion to set aside the default judgment. The circuit court did not address the evidentiary basis for the damages awarded in the default judgment. Rather, it simply awarded plaintiff all her claimed damages.

[¶22.] Our standard for reviewing damage awards differs from the one we use to review refusals to set aside default judgments: a damage award is reviewed for clear error. *See Stephenson*, 524 F3d at 916 (citation omitted); *Am. Red Cross*, 257 F3d at 864; *Everyday Learning Corp.*, 242 F3d at 818; Morris v. Wilson, 600 So2d 306, 308 (AlaCtApp 1992). Clear error exists when, after a review of all the evidence, "we are left with a definite and firm conviction that a mistake has been made." Graves v. Dennis, 2004 SD 137, ¶9, 691 NW2d 315, 317 (citations omitted).

[¶23.] In support of her request for a default judgment, plaintiff submitted an affidavit. She alleged that she paid her portion of the September 2002 rent, but spent the majority of the month at her mother's home. When she returned to her apartment on September 13, she could not enter because Barker & Little placed a lockout box on her front door. Then, on September 18, she returned to her apartment to find that Barker & Little had removed all her personal items without permission.

[¶24.] Under SDCL 43-32-6,

> If the lessor of residential property unlawfully removes or excludes the tenant from the premises . . . the tenant may sue for injunctive relief, recover possession by suit, or terminate the rental agreement and, in any case, *recover from the lessor damages in an amount equal to two months rent and the return of any advance rent and deposit paid to the lessor by the lessee.*

(Emphasis added.) The facts alleged in plaintiff's complaint and affidavit are accepted as true, and thus establish that on two occasions Barker & Little

unlawfully excluded plaintiff from her rental unit. The monthly rent due on plaintiff's apartment was $495; she paid $247 in advance rent; and a $495 deposit. Under SDCL 43-32-6, plaintiff is entitled to "two months rent and the return of any advance rent and deposit paid. . . ." The circuit court awarded plaintiff two months rent for each lockout, as well as her deposit and advance rent paid, for a total award of $2,722 in statutory damages under SDCL 43-32-6. There being evidentiary support in the record for the award, there is no clear error and these damages should be affirmed.

[¶25.]     Plaintiff also alleged that Barker & Little unlawfully appropriated, removed, and disposed of her personal property for total damages of $1,641. Plaintiff submitted an itemized list of the property, as well as the value of each item. From a review of the affidavit, there is no clear error and the award of $1,641 in compensatory damages should be affirmed.

[¶26.]     The court also awarded plaintiff $4,842 ($1,641 x 3) as treble damages under SDCL 21-3-6 to compensate her "for the detriment caused to her by being forcibly ejected and excluded from the full possession of the rental unit by [Barker & Little's] unlawful actions[.]" No facts in the record support that plaintiff was *forcibly* excluded or ejected from her apartment. *See* Woodring v. Winner Nat'l. Bank of Winner, 56 SD 43, 227 NW 438 (1929). In fact, although Barker & Little placed the lockout box on plaintiff's front door, Barker & Little never forced plaintiff out of the apartment, or threatened the use of force to exclude her. With no record support for treble damages under SDCL 21-3-6, the award was unwarranted, and

granting the damages was clearly erroneous. Thus, the judgment should be modified to exclude the award of these damages.

[¶27.]	Finally, the court awarded plaintiff $15,000 in punitive damages: $5,000 for Barker & Little's invasion of plaintiff's privacy, and $10,000 for its intentional infliction of emotional distress by its willful and malicious conduct. In support of her claim for punitive damages, plaintiff alleged by affidavit that before Barker & Little's unlawful actions she was in the process of overcoming her economic problems. Barker & Little's actions, plaintiff averred, caused the Pennington County Housing & Redevelopment Authority to close her case and decline future assistance for her. Before she was locked out of her apartment, plaintiff was fully employed, obtaining only $10 a month in food stamps, was no longer receiving significant state assistance, and was paying almost $200 toward her $495 monthly rental obligation. After Barker & Little's actions, however, plaintiff stated that much of her personal property was destroyed by Barker & Little, she could not obtain suitable housing for herself and her son, she had to quit her job, sell her remaining personal items, and move to Nevada to live with her son's father. She also attested that after Barker & Little's actions she obtained counseling for mental distress through Working Against Violence, Inc. She claimed that "Barker & Little's intentional action, namely repeated lockouts, and the removal and destruction of [her] and [her] son's personal property . . . caused [her] ongoing emotional distress and suffering."

[¶28.]	Punitive damages are warranted if there is clear and convincing evidence that a defendant has engaged in "willful, wanton or malicious conduct"

against the plaintiff.  *See* SDCL 21-1-4.1.  Here, plaintiff alleged that Barker &

Little's actions against her were willful and malicious.  Plaintiff paid her share of

September's rent; Barker & Little intentionally and unlawfully excluded her from

her rental unit; Barker & Little removed and destroyed much of her personal

property; Barker & Little's actions caused her to lose housing assistance, which

assistance was necessary for her to care for herself and her son; and these actions

caused her emotional distress.  Also, according to plaintiff's affidavit, Barker &

Little humiliated her in the manner in which she was treated after the lockouts.

[¶29.]        Judging from plaintiff's affidavit and complaint, the court did not err

in awarding plaintiff punitive damages.  An award of punitive damages, however,

must not be oppressive and must be supported by the evidence in the record.

Hulstein v. Meilman Food Industries, 293 NW2d 889, 894 (SD 1980) (award should

not shock the conscience of a fair-minded person); *Comdyne I, Inc.*, 908 F2d at 1149,

1152 (punitive damages imposed by default judgment generally require an

evidentiary hearing); *Hilgeman,* 994 P2d at 1036-37 (same).  Five factors are

relevant in the consideration of a punitive damage award:  "(1) the amount allowed

in compensatory damages, (2) the nature and enormity of the wrong, (3) the intent

of the wrongdoer, (4) the wrongdoer's financial condition, and (5) all of the

circumstances attendant to the wrongdoer's actions."  Flockhart v. Wyant, 467

NW2d 473, 479 (SD 1991); *see also* Grynberg v. Citation Oil & Gas Corp., 1997 SD

121, ¶37, 573 NW2d 493, 504.  While there is evidentiary support for the court's

decision to award punitive damages, the inadequate record substantially hinders a

review of whether the award is oppressive and so large as to shock the conscience of a reasonable person.

[¶30.]    The default judgment should be modified to exclude the award of statutory damages under SDCL 21-3-6, and the punitive damage claim should be remanded for evaluation using the above considerations.

SABERS, Retired Justice (dissenting).

[¶31.]    I agree with Justice Konenkamp's analysis as to the failure to establish damages, but I think the trial court should have vacated the entire default judgment on the basis of SDCL 15-6-60(b)(6).

[¶32.]    SDCL 15-6-60(b)(6) permits a court to set aside a default judgment when there is "[a]ny other reason justifying relief from the operation of the judgment." Relief under this section must be asserted within a reasonable time. *Id.*

[¶33.]    During the motion hearing on April 28, 2003, the trial court stated: "a $24,000 default judgment is an inappropriate windfall here given the circumstances . . . [$]24,000 can't stand . . . [s]o draw [the] order setting it aside." Then, Plaintiff's counsel requested terms for drawing the default judgment and stated, "I will prepare an affidavit as far as the amount[.]" The trial court responded: "[Peters] needs some fairness. It's not $24,000[,]" but "[s]he needs some fairness." The trial court directed Plaintiff's counsel to "get this done," meaning to work it out. Although defense counsel failed to file an order setting aside the default judgment, it was Plaintiff's counsel who directly violated the trial court's oral statement that the judgment cannot stand by attempting to execute on the judgment even though

he knew it was orally vacated.  Apparently both sides are at fault for not working it out, but Plaintiff's counsel is more at fault for his knowing violation.  Under the circumstances of this case and within a reasonable time, there is sufficient reason justifying relief pursuant to SDCL 15-6-60(b)(6).

[¶34.]     As the trial judge stated in 2003, the $24,000 default judgment was an inappropriate windfall.  It still *is* an inappropriate windfall.  It cannot stand.  Therefore, this Court could and should vacate the default judgment under SDCL 15-6-60(b)(6) and remand for a hearing on damages.